IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CECIL R. BEN, #150219                                                    PETITIONER

v.                                              CIVIL ACTION NO. 3:14CV149-TSL-JCG

JOHNNIE DENMARK and JIM HOOD,
Attorney General of the State of Mississippi                        RESPONDENTS

## REPORT AND RECOMMENDATIONS

BEFORE THE COURT is the Application of Cecil R. Ben ["Petitioner"] for

Writ of Habeas Corpus [1] pursuant to Title 28, United States Code, Section 2254

filed November 1, 2013.  Johnnie Denmark and Mississippi Attorney General Jim

Hood ["Respondents"] filed a Response [8] to the instant Petition, and Ben filed a

Traverse [11].  Having considered the submissions, records on file, the arguments of

the parties, and relevant legal authority, the undersigned United States Magistrate

Judge recommends that Petitioner's request for relief pursuant to 28 U.S.C. § 2254

be denied.

BACKGROUND

Petitioner Ben was convicted of rape after a jury trial in the Circuit Court of

Leake County, Mississippi, and the jury fixed his punishment as imprisonment for

life.  The facts heard by the jury were summarized by the Mississippi Court of

Appeals as follows.

On October 3, 2007, at approximately 4:30 a.m., Ben, a bus driver
with the Choctaw Transit Authority, picked up a passenger, Monica.
Monica was eighteen years old at the time and a student at East Central
Community College.  Monica lived on Highway 35 outside of Carthage,
Mississippi.  Monica testified that she was the first passenger on the bus

that morning.  At one point during the ride, Ben pulled over at the intersection of Highways 35 and 25 in Carthage.  Monica testified that Ben then came back to her seat and tried to kiss her.  Monica resisted his advances by pushing, kicking, and yelling; but Ben overpowered her.  Monica testified that Ben was able to pin her down, while he pulled her pants and underwear down.  Monica stated that Ben then inserted his penis into her vagina.  Monica stated that after the rape, Ben cleaned himself with paper towels, and then he threw these paper towels out of the bus.

Monica did not notify anyone of the rape until October, 7, 2007, when she told her best friend, Maurice Hines.  Monica testified that she waited until then to notify anyone because she was ashamed and embarrassed.  Monica identified Ben in the courtroom as the person who had raped her.

Hines testified that he spoke with Monica the night of October 7th.  Hines testified that he could tell that Monica was upset and urged her to confide in him.  Hines testified that Monica then told him that she had been raped by Ben.

Monica then informed her mother of the situation, and her mother called the Choctaw Police Department.  Officer Timothy Thomas responded to Monica's home, where he took Monica's statement and received the clothes Monica had worn at the time of the rape.  Officer Thomas then followed Monica to the location of the rape, where Officer Thomas was able to locate the paper towels used by Ben.  Monica had informed Officer Thomas that the paper towels were "brown or pink-looking."  Officer Thomas then determined that the rape had occurred in Carthage, so the Carthage Police Department was notified and given the evidence collected thus far.  On cross-examination, Officer Thomas testified that in his report, he noted that Monica told him that she had waited to report the crime because she felt ashamed, dirty, and partly responsible.

Officer Van Perry of the Carthage Police Department testified that he took possession of the four paper towels and the victim's clothing.  Officer Perry then handed the evidence to Officer Kevin Cross.  Officer Perry also told Monica that she needed to undergo a rape test.

Sharon Hockett, a registered nurse with the Choctaw Health Department, was called in to perform an exam on Monica.  Hockett testified that Monica appeared upset and frightened, but a rape kit was

not performed because the rape had occurred over seventy-two hours prior to the exam.

Bill Jones, an analyst with the Mississippi State Crime Laboratory, testified that samples of a paper towel containing seminal fluid and blood samples from Ben and Monica were sent to a private forensic laboratory, Orchid Cellmark, in Texas for further DNA testing. Casey Dupont, the senior forensic scientist at Orchid, performed DNA testing on all three samples. Dupont testified that the stain on the paper towel contained a mixture consistent with the DNA from the blood samples from both Ben and Monica.

*Ben v. State*, 96 So. 3d 9, 12-13 (Miss. Ct. App. 2011).

Ben appealed his conviction and sentence on the grounds that 1) his constitutional right to a speedy trial was violated by the nineteen-month delay from his arrest to the trial; 2) he was required to make peremptory challenges even though the state had not presented a full panel of jurors; 3) statements made by Hockett and Hines were hearsay and should not have been admitted; 4) testimony from witness Otis Mingo had not been disclosed during discovery and should have been excluded; 5) the evidence was insufficient to support the verdict, and the verdict was against the overwhelming weight of the evidence; and 6) his sentence was disproportionate when compared to sentences given to those convicted of the same offense. The Mississippi Supreme Court denied relief on all grounds presented. *Ben v. State*, 95 So. 3d 1236 (Miss. 2012).

Ben then requested permission from the Mississippi Supreme Court to file a motion for post-conviction relief in the trial court. He sought review on the grounds that 1) he was denied a speedy trial; 2) the prosecution committed a discovery violation with regard to Mingo's testimony; and 3) trial counsel was ineffective for

failing to introduce evidence of the victim's sexual behavior both before and after the rape.  The court denied Ben's request, holding that the first two grounds had been raised and decided against Ben on appeal, and the third ground was without merit because he had not demonstrated his counsel's performance was deficient under the standard set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). (Response Ex. E, ECF No. 8-5).

Ben has now filed a habeas corpus petition in this Court, in which he requests federal review of each issue he presented to the state courts on direct appeal and in his motion for post-conviction relief.

DISCUSSION

The Standard of Review

Under the Antiterrorism and Effective Death Penalty Act [AEDPA], where the issues were previously decided in the state court on the merits, that adjudication is entitled to deference.  *Amos v. Thornton,* 646 F.3d 199, 204 (5th Cir. 2011).  The federal courts do not function as super appellate courts over the states and hold no supervisory authority over those courts.  The Court may not correct errors of state law unless they also violate the constitutional rights of an accused. *Smith v. Phillips,* 455 U.S. 209, 221 (1981); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982).  Habeas review of the issues presented in Ben's petition is barred unless the Court determines that the state court's decisions were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Under the "contrary to" test of the AEDPA, a federal court may grant a writ of habeas corpus, with respect to claims adjudicated on the merits in state court, only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 402-03 (2000). Additionally, under the "unreasonable application" standard of review of a state court decision, federal courts should inquire whether the state court's application of clearly established federal law was *objectively* unreasonable. *Tucker v. Johnson,* 242 F.3d 617, 620-21 (5th Cir. 2001). The statute presumes each factual finding by the state court is correct. These findings can be disturbed only if the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court considers all evidence in the light most favorable to the prosecution, while referring to the substantive elements of the criminal offense as defined by state law. *Weeks v. Scott,* 55 F.3d 1059, 1062 (5th Cir. 1995).

Sufficiency of the Evidence

Ground One of Ben's Petition is a challenge to the sufficiency of the evidence supporting his conviction.[1] He contends that Monica's testimony was "contradictory, conflicted with the physical facts and surrounding circumstances

---

[1] Ben alternatively argues that his conviction is against the overwhelming weight of the evidence. The "weight" of the evidence is not a constitutional claim and is not grounds for relief under 28 U.S.C. § 2254. *Young v. Kemp,* 760 F.2d 1097, 1105 (11th Cir. 1985).

and common experience." (Pet. 6, ECF No. 1). Ben argues that Monica had no bruises or scratches after the rape. He also states that she did not behave like a person who had just been raped; she did not mention it to any other passenger as Ben continued driving the route or the transit authority when she arrived at her destination, and did not seek treatment immediately afterwards. Further, Monica's mother's testimony did not corroborate Monica's testimony that she was extremely upset, showered compulsively, stayed in her room, and had suicidal thoughts.

The sufficiency of the evidence may be considered in a federal habeas petition, but only when the evidence, viewed in the light most favorable to the prosecution, is such that no rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Ben was accused of violating Miss. Code § 97-3-65(4)(a), having "forcible sexual intercourse" with, and thereby raping, Monica. (*See* Indictment, S.R. Vol. I at 2, ECF No. 9-1).

The state court found, and the Court agrees, that sufficient evidence supported the jury verdict which found Ben guilty of rape. This included Monica's testimony that Ben had raped her, and evidence that she brought a police officer to the spot the rape had occurred, where the officer found the paper towels Monica described. Along with the evidence provided by Monica's interactions with her friend, mother, and the nurse who examined her, this was sufficient evidence to support Ben's conviction for rape when viewed in the light most favorable to the prosecution. Thus, the state court's finding regarding the sufficiency of evidence

supporting the rape conviction was not contrary to clearly established federal law nor did it involve an unreasonable application of clearly established federal law. The Court recommends that Ground One, based on sufficiency of the evidence, should be dismissed.

Speedy Trial

Ground Two of Ben's petition is an allegation that his speedy trial rights were violated because he was arrested on October 19, 2007, indicted on November 4, 2008, and his trial did not begin until May 13, 2009.

The state courts found no violation of Ben's speedy trial rights after applying the Sixth Amendment standard set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Under *Barker*, courts are to examine: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant asserted his right to a speedy trial; and 4) prejudice to the defendant. *Id*. The Mississippi Supreme Court found that the period between Ben's arrest and trial was about 570 days. As this exceeded the eight month delay that is presumptively prejudicial in Mississippi, the court continued with the full *Barker* analysis. *Ben v. State*, 95 So. 3d 1236, 1242 (Miss. 2012).

*The Barker Factors*

a.  The Length of the Delay

In examining the length of a speedy trial delay, the Fifth Circuit also looks at an additional factor – "the extent to which the delay extends beyond the bare

minimum required to trigger a *Barker* analysis, which is particularly significant to the speedy trial analysis because the presumption that pretrial delay has prejudiced the accused intensifies over time." *Amos*, 646 F.3d at 206 (citation, quotation marks, and ellipses omitted).  In the Fifth Circuit, "[t]he bare minimum required to trigger a *Barker* analysis is one year.  A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused." *Id*. at 206-07 (citation omitted).   The delay between Ben's arrest and trial exceeded the one-year minimum by about six months.  Although, as the state courts concluded, this delay justifies a full *Barker* analysis, the delay is not long enough to weigh heavily in favor of the accused under Fifth Circuit precedent.  *Id*. at 207.

   b.  The Reason for the Delay

  The burden is on the state to justify the delay, and "different reasons are entitled to different weight." *Amos*, 646 F.3d at 207.  The Mississippi courts found the bulk of the delay in Ben's case was due to the state crime lab's forensic and DNA testing, but the timing and limited number of grand jury sittings in Leake County also played a role.  These factual findings by the state courts are presumed to be correct.  28 U.S.C. § 2254(e).  This Court agrees that the prosecution moved forward deliberately in Ben's case without any gaps attributable to purposeful delay on the state's part.  *See United States v. Ewell*, 383 U.S. 116, 120 (1966) ("The essential ingredient is orderly expedition and not mere speed.").  Further, five

months of the delay were the result of Ben's request for a continuance of the trial date. The Mississippi Supreme Court reasonably held that this factor weighed only marginally against the state.

c. Defendant's Assertion of the Right

The third *Barker* factor asks whether the defendant diligently asserted his speedy trial right. *Amos*, 646 F.3d at 207 (citation and quotation marks omitted). The burden is on the defendant to alert the government of his grievances. *Id*. A defendant's assertion of his speedy trial right receives strong evidentiary weight, while failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. *Id*. This factor can also cut against the defendant where there was a lengthy delay between his arrest or indictment and his assertion of his speedy trial right. *Id*.

In this case, Ben allowed a lengthy delay between his arrest and assertion of his speedy trial right. He filed his speedy trial motion about fifteen months after his arrest – two weeks before his trial was scheduled to begin. As a result, the Mississippi Supreme Court found this factor weighed against Ben.

d. Prejudice Suffered Due to Delay

The fourth and final Barker factor is the prejudice suffered by the defendant due to the delay. *Amos*, 646 F.3d at 208. Ordinarily the burden is on the defendant to demonstrate actual prejudice, which is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pretrial incarceration; (2) to

minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id*. (citations and quotation marks omitted).

Ben's first argument as to how he was prejudiced by the delay is that his ability to put on a defense was impaired by the fact that several potential witnesses' memories had faded. The Mississippi Supreme Court reviewed Ben's claims that several of the bus riders did not really remember anything because of the passage of time. *Ben*, 95 So. 3d at 1246. The court found no real prejudice, however, since there was no dispute that sexual intercourse occurred, and Ben had the opportunity and incentive to interview the bus passengers as soon as he knew he was being charged with rape.

Ben also asserted prejudice from restraints to his liberty. He lost his job, "suffered a great deal of anxiety and was viewed with suspicion as he awaited indictment and then trial." *Id*. The Mississippi Supreme Court found that this fourth factor weighed slightly in favor of Ben.

e. Balancing the Factors

After assigning a weight to each factor as required by *Barker*, the Mississippi Supreme Court balanced the factors, finding that "[t]hough close, the minimal prejudice here and the fact that Ben did not want a speedy trial leads us to find that Ben's constitutional right to a speedy trial was not violated." *Ben*, 95 So. 3d at 1247. This Court's review of the Mississippi Supreme Court's resolution of Ben's speedy trial challenge shows that the decision was neither contrary to, nor an unreasonable application of, federal law as determined by the United States

Supreme Court.  Habeas review is therefore barred under 28 U.S.C. § 2254(d)(1).

The Court recommends that Ground Two, based on violation of speedy trial rights,

should be dismissed.

Testimony of Nurse Hockett

In Ground Three of his petition, Ben argues that the trial court erred when it

allowed Nurse Hockett to testify that when she examined Monica after the rape,

"there was nothing to indicate that [Monica] was not telling the truth."  Ben asserts

this testimony was an improper attempt to bolster Monica's credibility.

The state courts found this issue to be procedurally barred from review

because counsel did not make a contemporaneous objection at trial.  Despite the

procedural bar to review, the Mississippi Supreme Court found no miscarriage of

justice resulted from allowing Hockett's testimony.  *Ben*, 95 So. 3d at 1252 (¶50).

The Fifth Circuit has held that Mississippi's contemporaneous objection rule

is an independent and adequate state procedural bar.  *Johnson v. Puckett*, 176 F.3d

809, 824 (5th Cir. 1999).  In order to obtain federal habeas review of his

procedurally defaulted claim, Ben bears the burden of proof to show that the state

does not strictly or regularly follow the procedural bar.  *Williams v. Puckett*, 283

F.3d 272, 280 (5th Cir. 2002).  As Ben has not attempted to carry his burden, this

Court may not review the claim presented in Ground Three.  The Court

recommends that Ground Three be dismissed.

The Jury Selection Process

In Ground Four, Ben argues that the trial court erred in failing to present

him with a complete panel of jurors before requiring him to make strikes.  The

Respondents argue that this claim is unexhausted, because although presented in

his initial appeal, Ben did not include the issue in either his petition to the

Mississippi Supreme Court for writ of certiorari or his request for post-conviction

collateral relief.

"Applicants seeking federal habeas relief under § 2254 are required to

exhaust all claims in state court prior to requesting federal collateral relief." *Fisher*

*v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *see also Whitehead v. Johnson*, 157 F.3d

384, 387 (5th Cir. 1998).  Ben's failure to seek discretionary review with the

Mississippi Supreme Court renders his claim regarding the jury selection process

unexhausted.  *See, e.g., Richardson v. Procunier,* 762 F.2d 429, 431 (5th Cir. 1985)

(rejecting argument that discretionary appeal to state supreme court is unnecessary

for the purpose of exhausting state remedies); *see also O'Sullivan v. Boerckel,* 526

U.S. 838, 845 (1999) (holding that state prisoner must present his claims to state

supreme court in a petition for discretionary review when that review is part of the

state's ordinary appellate review).  The time to seek certiorari review has long

expired.  *See* Miss. R. App. P. 17(b) (requiring petition for writ of certiorari to be

filed within fourteen days from the date of entry of the judgment by the Court of

Appeals on the motion for rehearing).  Therefore, a return to state court would be

fruitless in this case.

Because Ben's state court remedies were rendered unavailable by his own

failure to properly exhaust his claims, he has procedurally defaulted his claims for

purposes of federal habeas review. *See Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust his state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claims procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief."). However, a federal court "may resurrect a defaulted claim, and consider its merits" under two narrow exceptions: cause and actual prejudice or miscarriage of justice. *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2005).

Ben did not address the Respondents' exhaustion argument in his Traverse, and thus has not attempted to argue any cause or prejudice for his default. Nor does the Court find that failure to address the claim would result in a miscarriage of justice. The miscarriage of justice exception is confined to cases of actual innocence "where the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citation omitted). Ben argues that he did not have forcible sexual intercourse with Monica, but he makes the same arguments regarding the evidence that the jury considered and rejected in reaching its verdict. This is insufficient to show his innocence as a factual matter. Furthermore, the Mississippi Court of Appeals found Ben's complaint about the jury selection process to be without merit, because the prosecution had accepted twelve jurors prior to submitting them to Ben. *Ben v. State*, 96 So. 3d 9, 15 (¶20) (Miss. Ct. App. 2011). The Court therefore finds the miscarriage of justice exception inapplicable. Ground Four is unexhausted and

unreviewable.  The Court recommends that it be dismissed.

Testimony of Otis Mingo

In Ground Five of his Petition, Ben argues that the trial court erred when it allowed testimony from Mingo regarding a conversation about Monica between Ben and his co-worker Mingo.  Ben asserts that even though Mingo was included on the prosecution's witness list, the prosecution was also "required to disclose a copy of any oral statement of the defendant" under Mississippi's evidentiary rules.  The Mississippi Supreme Court held that although the trial court erred in following the procedure of the Uniform Circuit and County Court Rules, no miscarriage of justice resulted.  The court focused on the substance of Mingo's testimony: "Ben's alleged remark to Mingo showed that Ben was sexually attracted to Monica but that is all: It did not support either forcible or consensual sexual intercourse occurred two days later."  *Ben*, 95 So. 3d at 1250.

Whether the trial court erred in applying Mississippi evidentiary rules is a matter of state law, not federal law.  A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair.  *Johnson v. Puckett*, 176 F.3d at 820 (citing *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994)).  There is no specific constitutional right at issue here, *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982), nor did fundamental unfairness result from the trial court's failure to follow Mississippi's evidentiary rules.  Ground Five does not entitle Ben to federal habeas relief, and therefore the Court recommends that it be dismissed.

-14-

The Life Imprisonment Sentence

Ben argues in his sixth ground that the life imprisonment sentence imposed by the jury is grossly disproportionate.  The Respondents argue that this claim is unexhausted, because although presented in his initial appeal,[2] the issue was not included in either Ben's petition to the Mississippi Supreme Court for writ of certiorari or his request for post-conviction collateral relief.  Because Ben's state court remedies were rendered unavailable by his own failure to properly exhaust his claims, he has procedurally defaulted his claims for purposes of federal habeas review.  Ben did not address the Respondents' exhaustion argument in his Traverse, and thus has not attempted to argue any cause or prejudice for his default.  Nor does the Court find that the miscarriage of justice exception applies.  Accordingly, Ben's claim concerning the length of his sentence may not be reviewed by this Court.  Ground Six should therefore be dismissed.

Ineffective Assistance of Counsel

In Ground Seven, Ben alleges that his trial counsel was ineffective because he did not attempt to question Monica about an incident in which she "was caught  . . . at East Central Community College, in the men's dorm . . . which is forbidden by the college procedure and rules."  (Pet. 20, ECF No. 1).  He asserts that counsel had

---

[2]  The appellate court referred to the United States Supreme Court decision applicable to Eighth Amendment sentence proportionality analysis, *Solem v. Helm*, 463 U.S. 277, 292 (1983), in finding that there was no inference of gross disproportionality in Ben's case.  If this Court were to review the issue, it would conclude that the appellate court reasonably applied the standard set out in *Solem*.

the incident report long before trial began, and counsel "should have employed

these documents when building the defense strategy." (*Id.*).  Ben notes that this

issue was "argued extensively in the petition seeking post conviction relief filed in

the Mississippi Supreme Court." (*Id.*).

In denying the motion for post-conviction relief, the Mississippi Supreme

Court stated:

> The ineffective assistance of counsel claim is without merit where Ben
> fails to demonstrate that his attorney's performance was deficient and
> that such deficiency prejudiced his defense. A defendant must
> demonstrate that his counsel's performance was deficient *and* that the
> deficiency prejudiced the defense of the case. *Strickland v. Washington*,
> 466 U.S. 668, 687 (1984).

(Resp. Ex. E 2, ECF No. 8-5).  Because the Mississippi Supreme Court considered

Ben's ineffective assistance of counsel claim, the question for this Court becomes

whether that court's application of the *Strickland* standard was unreasonable.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011).  "A state court must be granted a

deference and latitude that are not in operation when the case involves review

under the *Strickland* standard itself." *Id*.

The Mississippi Supreme Court's application of the *Strickland* standard was

reasonable.  It is well-established that counsel's decision of whether and, if so, how

to impeach a witness falls within the purview of counsel's trial strategy.  Counsel's

failure to present impeachment evidence does not constitute deficient performance

within the meaning of *Strickland* "if [counsel] could have concluded, for tactical

reasons, that attempting to present such evidence would be unwise." *Williams v.*

-16-

*Cockrell*, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (quoting

*Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  Ben's counsel could have

concluded that presenting evidence that Monica was in a men's dorm would not

effectively impeach her testimony that she had not consented to sexual intercourse

with Ben, or cause the jury to be more sympathetic to her.  Further, even if the

incident report constituted evidence of Monica's sexual activity after the rape, the

Mississippi Rules of Evidence strictly limit the circumstances under which that type

of evidence is admissible.  *See* Miss. R. Evid. 412; *Holloway v. State*, No. 2012-KA-

01389-COA, 2015 WL 5332382, at *4 (Miss. Ct. App. Sept. 15, 2015).  Accordingly,

the Mississippi Supreme Court's conclusion that counsel's performance was not

deficient was a reasonable application of federal law as established by the United

States Supreme Court in *Strickland*.  Habeas review of Ground Seven is therefore

barred under 28 U.S.C. § 2254(d)(1).  The Court recommends that Ground Seven be

dismissed.

## RECOMMENDATION

Based on the above analysis, the undersigned recommends that the

Petitioner's Application for Writ of Habeas Corpus pursuant to Title 28, United

States Code, Section 2254, be denied and this case dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District*

*Courts for the Northern District of Mississippi and the Southern District of*

*Mississippi* (Dec. 1, 2011), after service of a copy of this Report and

Recommendation, each party has fourteen days to serve and file with the Clerk any

written objections to it.  Within seven days of service of objections, the opposing

party must either serve and file a response or notify the District Judge that he does

not intend to respond to the objection. An objecting party must specifically identify

the findings, conclusions, and recommendations to which he objects; the District

Court need not consider frivolous, conclusive, or general objections.  A party who

fails to file written objections to the proposed findings, conclusions, and

recommendations within fourteen (14) days of being served a copy is barred, except

upon grounds of plain error, from attacking on appeal any proposed factual finding

or legal conclusion accepted by the District Court to which he did not object.

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

       **SIGNED**, this the 15th day of December, 2015.

                          s/ *John C. Gargiulo*

                          JOHN C. GARGIULO
                          UNITED STATES MAGISTRATE JUDGE